Pamela PAVATT, Appellant,

v.

James PAVATT, Appellee.

No. 85710.

Court of Appeals of Oklahoma,
Division No. 3.

June 11, 1996.

William T. Brett, Oklahoma City, for Appellant.

Tom Cummings, Oklahoma City, for Appellee.

## OPINION

HANSEN, Presiding Judge:

On October 17, 1991, the trial court entered a decree of divorce, granting Plaintiff, Pamela Pavatt, and Defendant, James Pavatt, their divorce, and deciding all property division issues, support alimony issues, custody and visitation.

Among other things, the trial court divided Defendant's military retirement benefits, awarding 50% of the benefits to Plaintiff and 50% of the benefits to Defendant upon his future retirement.[1] The trial court entered a Qualified Domestic Relations Order in conjunction with the divorce decree.[2] Neither party appealed the provisions of the divorce decree.

On September 30, 1992, Defendant elected to "separate" from active duty in the Air Force and transfer to the Individual Ready Reserve. Defendant received a Special Separation Benefit (SSB) in the amount of $67,366.65. He did not pay any percentage of this benefit to Plaintiff. Subsequently, Plaintiff filed an application for contempt citation, requesting the trial court enter an order requiring Defendant to pay her 50% of the special separation benefit.

On March 6, 1995, the parties and the trial court met in chambers and reviewed statutes and case law. The trial court determined, among other things, "that the separation money is non-divisible because the divorce decree is silent as to separation money, although the retirement money would have been divisible." The trial court then invited counsel to make a record. In the journal entry of judgment, the trial court found "...

the Decree of Divorce and Qualified Domestic Relations Order fails to make a provision for separation or termination or special benefits in separation from the military and that therefore the Special Separation Benefits received by the Defendant are not within the terms of the Decree of Divorce or Qualified Domestic Relations Order. That the Special Separation Benefit is not marital property." The trial court then denied Plaintiff's third application for citation for contempt for failure to pay in the amount of $32,636.25. Plaintiff appeals.

Defendant filed a motion to dismiss the appeal on the grounds that, this Court is without jurisdiction to entertain this appeal because at the March 6th hearing, Plaintiff dismissed her action.[3] He argues that no evidence was adduced and no rulings entered. However, both parties approved the journal entry of judgment as to form, the trial court signed it and it was filed. Defendant's motion to dismiss is denied.

■ On appeal, Plaintiff contends the trial court erred in failing to find Defendant in contempt of court for refusing to pay Plaintiff her portion of the SSB. In equitable proceedings, this Court must affirm the trial court's decision unless the record reveals some error of law or the trial court's decision is clearly against the weight of the evidence. *Marshall v. Marshall,* 364 P.2d 891 (Okla. 1966).

To determine whether the trial court erred in failing to find Defendant in contempt, we must first determine whether, as a matter of law, Plaintiff was entitled, pursuant to the decree, to a portion of the SSB.

The SSB program was created when Congress enacted 10 U.S.C. § 1174a. Under its

---

1. During the parties' twenty year marriage, Defendant spent eighteen years and eight months in the military service.

2. The QDRO provides, pursuant to the factual recitals and provisions regarding the assignment of retirement benefits:

   C. Amount or percentage of Participant's benefits to be paid by the Plan to Alternate Payee, or manner in which such amount or percentage is to be determined and the number of payments or period to which this Order applies:

1. *Retirement Plan.* Fifty percent (50%) of Participant's accrued benefit under the United States Air Force Retirement Plan as of October 17, 1991. Alternate Payee shall receive her distribution from the Plan at the earliest date authorized under the terms of the Plan and in a form of distribution authorized under the terms of the Plan.

3. Defendant terms this hearing a "memorialization of a pre-trial conference between the parties and the trial judge."

provisions, certain active military personnel may voluntarily separate from active military service prior to becoming entitled to retirement and receive an SSB payment based upon the formula in § 1174a. A person who has accepted an SSB payment must serve in the Ready Reserve for a period of not less than three years. If that person later qualifies for retirement pay, the SSB payment is recouped from the retirement benefits to which that person is entitled.

In *Kulscar v. Kulscar*, 896 P.2d 1206 (Okla.App.1995), the Court of Appeals addressed a similar set of facts. In affirming the trial court's treatment of the appellant's SSB payment as retirement, the Court held:

> Although Appellant's reenlistment in the reserve may allow him to use his previous active duty service to qualify for retirement benefits, the total benefits will be substantially less than if he had retired from active duty. More importantly, even if Appellant later qualifies for and receives reserve retirement, the SSB payment must be recouped from the retirements benefits to which he would be otherwise entitled. *See* 10 U.S.C. § 1174a(g). We believe the approach espoused in *In re Marriage of Crawford*, 180 Ariz. 324, 884 P.2d 210 (App.1994) is the more reasonable analysis and is more consistent with Oklahoma law than an analysis which allows one party to retain all the compensation for unilaterally altering a retirement plan asset in which the other party has a court-decreed interest . . .

▮ Likewise, in the instant case, the SSB payment is to be treated as a retirement plan asset. As such, it is marital property subject to division. *See Rookard v. Rookard,* 743 P.2d 1083 (Okla.1987) (the husband's military pension was divisible as a jointly acquired property.) Therefore, as a matter of law,

Plaintiff is entitled to a portion of the SSB payment.

The trial court's finding the divorce decree and the QDRO fail to make a provision for SSB and therefore the SSB payment is not within the terms of the decree or QDRO, and is not marital property, is reversed.

However, Defendant points out that a state court is prohibited from awarding to the spouse that portion of military retirement pay which constitutes disability benefits. He then states that, *"If* Appellee has received any such monies pursuant to said sections [10 U.S.C. § 1174a] and *if* Appellee has received or is receiving disability, any such monies received or receivable have been or would have been reclaimed. Therefore, there is no divisible asset to which appellant is entitled."

▮ There is some evidence in the record Defendant received service-connected disability compensation. In an undated letter to Defendant from the Department of Veteran Affairs, the adjudication officer explained that the department granted his claim for service-connected disability compensation. The officer stated:

> You received separation pay in the amount of $67,366.65. Your benefits will be withheld until the full amount of that pay has been received. Payments will be released automatically upon full recovery of your separation pay . . . .[4]

Plaintiff argues that pursuant to the Uniform Services Former Spouses Protection Act (USFSPA), 10 U.S.C. § 1408, certain portions of the disability pay are not sheltered from division by a state court in divorce proceedings. However, she cites this Court to no pertinent authority to support this assertion. In fact, 10 U.S.C. § 1408(c)(1) allows the division of "disposable retired . . . pay" which is defined as the total monthly retired pay, less any amount re-

---

4. 10 U.S.C. § 1174(H)(2) provides, in pertinent part:

(2) A member who has received separation pay under this section, . . . based on service in the armed forces shall not be deprived, by reason of his receipt of such separation pay, . . . of any disability compensation to which he is entitled under the laws administered by the Department of Veterans Affairs, but there shall

be deducted from that disability compensation an amount equal to the total amount of separation pay, . . . . Notwithstanding the preceding sentence, no deduction may be made from disability compensation for the amount of any separation pay, . . . if the disability which is the basis for that disability compensation was incurred or aggravated during a later period of active duty.

ceived as a result of a member's disability. 10 U.S.C. § 1408(a)(4)(C).

Therefore, this matter is remanded to the trial court for an evidentiary hearing to determine what portion of Defendant's SSB payment is divisible as marital property, giving consideration to the percentage of Defendant's disability on the date he retired, or in this case, separated from service. *See* 10 U.S.C. § 1408(a)(4)(C).

■ Next, Plaintiff complains that the trial court erred in failing to find Defendant in contempt of court for refusing to pay Plaintiff her portion of the SSB payment. In order for Defendant to be held in contempt for failure to pay, the divorce decree must be clear enough to give him notice of the decree's intent. *See McCrary v. McCrary*, 723 P.2d 268 (Okla.1986). Congress enacted the SSB program subsequent to the entry of the divorce decree and the decree did not specifically refer to similar payments. In *Kulscar v. Kulscar, supra*, the Court of Appeals found that any order finding the appellant in indirect contempt could not stand, and reasoned that "[g]iven the dearth of law interpreting these relatively new statutory provisions, it was not unreasonable for Appellant to conclude the decree did not cover the SSB payment."

We find the Court's analysis in *Kulscar* to be controlling here. The divorce decree was not clear enough to give Defendant notice of the decree's intent. That portion of the journal entry of judgment denying Plaintiff's third application of citation for contempt relating to the SSB payment in the amount of $32,636.25 is AFFIRMED.

Finally, Plaintiff contends that on Defendant's application for attorney fees below, the trial court "is holding the application in abeyance pending the outcome of the appeal." However, the record contains neither Defendant's application for attorney fees nor is there an order indicating the trial court is "holding the application in abeyance...." She requests this Court to "direct the lower court to deny the application and order any attorney fee in favor of the Appellant for the lower court action and for the appeal." However, regarding the issue of attorney fees below, this Court may not determine an issue which is not reflected in the record before us.

Both Plaintiff and Defendant seeks attorney fees and costs on appeal. These requests are denied.

This matter is AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.

ADAMS, V.C.J., and BUETTNER, J., concur.