[No. G020891. Fourth Dist., Div. Three. Sept. 10, 1998.]

In re Marriage of BERNADETTE and EVANGELIS BABAUTA.
BERNADETTE DIAZ, Respondent, v.
EVANGELIS BABAUTA, Appellant.

## Counsel

Michael J. Naughton for Appellant.

Stuart W. Knight for Respondent.

## Opinion

**SONENSHINE, J.**—Evangelis Babauta appeals from a postjudgment order finding his Marine Corps voluntary separation incentive (VSI) pay is the community property of himself and his former wife, Bernadette Babauta (now Bernadette Diaz). In this case of first impression in California, we decide whether the trial court possessed jurisdiction to divide the benefit and, if so, if it is community or separate property.[1]

I

At the time the parties divorced, Evangelis was a captain in the Marine Corps. Their 1991 dissolution judgment reserved the court's jurisdiction over Evangelis's military retirement pension.

Evangelis was eligible for retirement in 1995. In 1993, he took advantage of a voluntary separation program implemented pursuant to a Department of Defense (DOD) policy to reduce active duty forces. Two different benefits are provided for in 10 United States Code section 1175: VSI, consisting of monthly payments; or a lump sum payment—"Special Separation Benefit" (SSB). The DOD brochure explains a member is potentially eligible if, inter alia, he or she has fewer than 20 years of service. It warns, "If you are in a career field, pay grade, or year group for which your Service has more people than it needs[,] . . . you can expect to be offered the chance to elect one of the voluntary separation incentives before you are exposed to the possibility of involuntary separation."

 Evangelis decided to forego his retirement pay, instead choosing to receive 36 annual VSI payments of $17,721. Not surprisingly, Bernadette argued the payments are community property and Evangelis claimed they are his separate property. The trial court ruled in Bernadette's favor, explaining, "[T]hese benefits resulted from a change in the form of the benefits to which

---

[1]At oral argument, Evangelis acknowledged he challenged the court's right to divide the benefit and if we found the court had the right to do so, then he questioned its characterization. He maintained it was separate property, but conceded if we determined it was community then Bernadette is entitled to half.

[Evangelis] was already entitled even though he is receiving these earlier than provided in the original benefits package."

## II

In *McCarty* v. *McCarty* (1981) 453 U.S. 210 [101 S.Ct. 2728, 69 L.Ed.2d 589], our Supreme Court held state courts were without jurisdiction to divide federal military pensions. Thereafter, Congress wasted no time in enacting the Uniformed Services Former Spouses' Protection Act (USFSPA). (10 U.S.C. § 1408.) Pursuant to the USFSPA, state courts may divide a service member's *disposable retired pay* according to the laws of that state.

Evangelis argues VSI payments do not qualify as *disposable retired pay* because they are not "monthly retirement payments paid to a retired service member." Stated another way, he maintains Congress never intended VSI benefits to be subject to state court jurisdiction. He is wrong.[2] Indeed, the DOD brochure provides, "The treatment of VSI or SSB [by a state court in a divorce] is not dictated by Federal law. It will be up to the state courts to rule on the divisibility of these incentives."

All but one of the several state courts to address this issue have come to the same conclusion.[3]

Most recently, the Colorado Supreme Court in *In re Marriage of Heupel* (Colo. 1997) 936 P.2d 561, 562, determined "state equitable distribution laws are not pre-empted by federal law with respect to . . . payments . . . ."[4]

As we do, the *Heupel* court relied on the DOD pamphlet. (*In re Marriage of Heupel, supra*, 936 P.2d at p. 570.) It also cited 10 United States Code

[2]Evangelis relies on *In re Marriage of Kuzmiak* (1986) 176 Cal.App.3d 1152 [222 Cal.Rptr. 644] and *In re Marriage of Costo* (1984) 156 Cal.App.3d 781 [203 Cal.Rptr. 85]. *Kuzmiak* is inapt because it does not deal with the issue of a state court's right to divide a military benefit. And in any event, in light of *In re Marriage of Lehman* (1998) 18 Cal.4th 169 [74 Cal.Rptr.2d 825, 955 P.2d 451], which we discuss *post*, we question whether either *Kuzmiak* or *Costo* would be decided the same today.

[3]Those cases are: *In re Marriage of Crawford* (1994) 180 Ariz. 324 [884 P.2d 210]; *Kelson* v. *Kelson* (Fla. 1996) 675 So.2d 1370; *Blair* v. *Blair* (1995) 271 Mont. 196 [894 P.2d 958]; *Pavatt* v. *Pavatt* (Okla.Ct.App. 1996) 920 P.2d 1074; *Kulscar* v. *Kulscar* (Okla.Ct.App. 1995) 896 P.2d 1206; *Fisher* v. *Fisher* (1995) 319 S.C. 500 [462 S.E.2d 303]; *Marsh* v. *Wallace* (Tex.Ct.App. 1996) 924 S.W.2d 423.

Only *McClure* v. *McClure* (1994) 98 Ohio App.3d 27 [647 N.E.2d 832] has held otherwise. There, a service member chose VSI rather than subject himself to involuntary dismissal.

[4]In *Heupel*, the court considered SSB payments but explained, "SSB and VSI programs should be accorded the same status, for purposes of federal preemption analysis, because both programs serve the same purpose and are identical but for the means of allocating the separation benefit." (*In re Marriage of Heupel, supra*, 936 P.2d at p. 566.)

section 1174(h), which mandates SSB and VSI payments "are recouped from the retired pay that a separating member may become eligible to receive in the future."[5] (*Id.* at p. 571.) "That the separating officer must 'repay' the benefits received under the SSB and VSI programs in order to receive retired pay (if he or she later becomes eligible to receive it,) is strong evidence that SSB and VSI payments are a form of retired pay in the first instance." (*Ibid.*)

## III

That does not end our discussion. Having determined VSI benefits are subject to trial court jurisdiction, we still must decide their character. Evangelis argues VSI pay is separate property because it is a "cushion for job loss and job dislocation[,] as opposed to payment for past services rendered." Perhaps, but as the California Supreme Court recently explained in *In re Marriage of Lehman, supra*, 18 Cal.4th 169, an employer's motivation for the payment of benefits and an employee's reason for accepting them are irrelevant considerations in characterizing employment benefits.

In *Lehman*, the court addressed whether there was a community interest in employment benefits paid to an employee as an incentive for early retirement. The court held, "[A] nonemployee spouse who owns a community property interest in an employee spouse's retirement benefits under such a plan owns a community property interest in the latter's retirement benefits as enhanced." (*In re Marriage of Lehman, supra*, 18 Cal.4th at p. 177.) The court explained the employee spouse is free to define the nature of the retirement benefits owed to the community. "But regardless how the employee spouse might choose to exercise such freedom, the 'nonemployee spouse owns an interest' in what [is chosen.]" (*In re Marriage of Lehman, supra*, 18 Cal.4th at p. 179.)

Evangelis was free to retire before 20 years of service. By deciding to do so, however, he could not recharacterize Bernadette's interest in his retirement benefits from community to separate. ■ "[V]arious events and conditions after separation and even after dissolution may affect the amount of retirement benefits that an employee spouse receives. But not their character. Once he or she has accrued a right to retirement benefits, at least

---

[5]"That section provides as follows: [¶] '(h) Coordination with retired or retainer pay and disability compensation.— (1) A member who has received separation pay under this section, or separation pay . . . under any other provision of law, based on service in the armed forces, and who later qualifies for retired or retainer pay . . . shall have deducted from each payment of such retired or retainer pay so much of such pay as is based on the service for which he received separation pay . . . until the total amount deducted is equal to the total amount of separation pay . . . received.' 10 U.S.C. § 1174(h) (1994)." (*In re Marriage of Heupel, supra*, 936 P.2d at p. 571.)

in part, during marriage before separation, the retirement benefits themselves are stamped a community asset from then on." (*In re Marriage of Lehman, supra*, 18 Cal.4th at p. 183.)

■ Our sister state courts agree VSI and SSB benefits are marital or community property. "[A]s with pensions, the benefits accrued are directly attributable to the years of service during the marriage." (*In re Marriage of Heupel, supra*, 936 P.2d at p. 572.) "[L]ike a military pension, military service members who elect to take early retirement under either the SSB or VSI program receive a lump-sum payment or an annuity, respectively, based on the years of active service and the level of pay achieved at the time of separation. . . . In this sense, SSB and VSI benefits are analogous to retired pay and are compensation for services already rendered." (*Id.* at p. 568.)

The out-of-state decisions also recognize "[a]n employee spouse cannot defeat the nonemployee spouse's interest in retirement benefits by invoking a condition wholly within his or her control." (*In re Marriage of Crawford, supra*, 884 P.2d at p. 213; see also *Kelson* v. *Kelson, supra*, 675 So.2d at p. 1372 [VSI benefits are functional equivalent of retired pay because to hold otherwise would permit a servicemember spouse "to defeat the other spouse's court-awarded interest in military retirement benefits by unilaterally altering the form of those benefits in a manner that was unforseeable at the time the award was made"].) "Such unilateral control undermines Congress's intent in legislating the USFSPA and the SSB/VSI programs. Congress enacted the USFSPA specifically to counteract the effect of the Supreme Court's decision in *McCarty* [v. *McCarty, supra*, 453 U.S. 210] and, thereby, granted state courts the option to divide military pensions upon dissolution. The unilateral control to negate the future right to receive distributable retired pay—by receiving it as present-day separate property— would seriously undercut the primary purpose of the USFSPA." (*In re Marriage of Heupel, supra*, 936 P.2d at p. 569, fn. omitted.)

■ The out-of-state courts also took note of legislative intent. "Congress enacted the programs 'to assist separating personnel and their families in readjusting to civilian life' during a time of strength reduction. [Citation.] In *Crawford*, the Arizona Court of Appeals considered this quoted language and noted that it suggested 'that equitable division of SSB benefits is not inconsistent with congressional intent.' [Citations.] [¶] Similarly, the House Armed Services Committee stated in 1991 when considering the SSB and VSI programs that: 'The conferees take this action because of their concern over the effect of strength reductions during the next few years on our men and women in uniform and their families. The conferees especially recognize that this drawdown in strength is different from previous drawdowns because it affects the people who are a product of an all volunteer force.

Therefore, the conferees would provide these temporary authorities as tools to assist the military Services in selectively reducing, on a voluntary basis, that portion of the career personnel inventory that is not retirement eligible. The conferees believe that these authorities would give a reasonable, fair choice to personnel who would otherwise have no option but to face selection for involuntary separation, and to risk being separated at a point not of their own choosing.' " (*In re Marriage of Heupel, supra*, 936 P.2d at p. 570, fn. omitted.)

The trial court did not err in finding it had jurisdiction to divide the VSI benefit and in characterizing it as community property.

The order is affirmed. Bernadette shall recover her costs on appeal.

Sills, P. J., and Rylaarsdam, J., concurred.