**Ronald Lee LYKINS, Appellant,**

v.

**Martha Ann LYKINS, Appellee.**

**Nos. 1999–CA–000094–MR, 1999–CA–000927–MR.**

Court of Appeals of Kentucky.

Nov. 17, 2000.

W. Stokes Harris, Jr., Lexington, for Appellant.

Michael Davidson, Lexington, for Appellee.

Before JOHNSON, SCHRODER and TACKETT, Judges.

*OPINION*

JOHNSON, Judge:

These are the consolidated appeals of Ronald Lee Lykins from an order of the Fayette Circuit Court entered on December 11, 1998, and the final judgment entered on March 24, 1999, which dissolved his marriage to Martha Ann Lykins and resolved the disputes arising from their marital relationship. Ronald has raised three issues for our review, one of which presents an issue of first impression, that is whether payments received under the Voluntary Separation Incentive (VSI) program[1] are subject to equitable division under KRS[2] 403.190. After a review of the record and the applicable legal authorities, we discern no error in the trial court's

**1.** 10 U.S.C. § 1175 (2000).

**2.** Kentucky Revised Statutes.

determination that the VSI payments constitute marital property, nor any error with respect to the other rulings challenged in this appeal. Therefore, we affirm.

The parties were married in 1982, and separated in January 1997. They sold the marital residence and divided the proceeds of the sale, as well as their personal property, prior to the final hearing before the trial court. The parties' child, Leigha, was 13 years old at the time of their separation. Ronald and Martha each had a child from their prior marriages: Martha's child, Rachel, who was two-years-old at the time of the Lykins' marriage, lived with the parties throughout her minority; Ronald's son, Aaron, lived with the parties for four years. The decree of dissolution approved of the parties' division of property; provided for the parties to share joint custody of Leigha; provided that Ronald would provide support for Leigha calculated by using his current income from nursing and not an imputed income; and provided that Ronald would pay Martha the sum of $300 per month for two years in rehabilitative maintenance, if Martha enrolled in a Master's level program to enhance her undergraduate degree in psychology. Additional facts and rulings of the trial court will be recited as they relate to the arguments presented.

■ The primary issue in this appeal concerns the trial court's characterization of certain payments to which Ronald has become entitled as a result of his voluntary separation from the military in 1992. When the parties married in 1982, Ronald was a member of the United States Army and remained so until September 1992. Ronald, who held various positions in the military, including helicopter pilot and instructor, spent six and ½ years in the military prior to his marriage to Martha, and had a total tenure of 16 years in the military at the time of his voluntary resignation. There is no question that in 1991 the federal government wanted to reduce the size of the military forces and passed legislation to entice personnel, with between six and 20 years of active military service, to voluntarily resign rather than "run the risk of being involuntarily separated due to reductions in the size of the United States military".[3] Pursuant to legislation creating the VSI program and the Special Separation Benefit (SSB) program,[4] eligible personnel can choose to receive either an annuity "for the period equal to twice the number of years of service,"[5] in exchange for remaining in the inactive reserve (VSI), or a lump-sum payment (SSB), for remaining in the active reserves for three years.

When he separated from the military, Ronald opted for the VSI plan which entitled him to receive $18,102.53[6] a year for thirty-four (34) years, commencing in September 1992. Both parties enjoyed the VSI benefits until their marital separation at which time Ronald insisted the payments were his separate property. Martha contended that the percentage of the payments attributable to the years Ronald was in the military during the marriage constituted marital property subject to division. Ronald moved for a summary judgment on the issue of the nature of the asset. On December 12, 1998, the trial court entered the first of the two orders from which Ronald has appealed and concluded that the payments constituted marital property, subject to Ronald's non-marital component.[7] In the final judgment,

---

3. *Kelson v. Kelson,* 675 So.2d 1370, 1372 (Fla. 1996).

4. 10 U.S.C. § 1174a (2000).

5. *Id.* at § 1175(2)(A).

6. The amount of the benefit was calculated by the following formula: 2.5% of his monthly basic pay, multiplied by 12, and the result multiplied by the number of years of service. § 1175(e)(1). Ronald also receives some disability payments which reduce the VSI dollar for dollar.

7. Ronald's appeal from this order was consolidated with his appeal from the final judgment of the Fayette Circuit Court.

Ronald was awarded a portion of the VSI payments representing his pre-marital years of military service as his non-marital property. The remaining VSI payments were divided equally, resulting in an award to Martha of 30.13% of the "after-tax" VSI payments to be paid within five days after Ronald's receipt of the annual payment.

In his brief, Ronald contends that the trial court erred in its determination that any of the VSI payments constituted marital property. He insists that the trial court "ignored the statutory realities of VSI," and "failed to justify [its] ruling." Ronald criticizes the trial court for "ignor[ing] th[e] reasoning from our neighboring state" articulated in *McClure v. McClure*,[8] and its comparison of VSI payments to severance pay, an analogy he opines, which "apparently eluded the trial court." Martha, not surprisingly, argues that the trial court was not in error and that its decision "is firmly backed by legislative history, eight other Courts and equity."

■ The beginning point in our examination of the trial court's characterization of any asset is KRS 403.190(2), which defines marital property as "all property acquired by either spouse subsequent to the marriage," except property acquired by gift, bequest, devise or descent and other exceptions not relevant to the matter *sub judice*. In general, property is "presumed to be marital,"[9] and the trial court has "wide discretion" in the division of marital assets.[10] However, assets obtained during the marriage which represent loss of post-dissolution earnings do not constitute marital property subject to division.[11] Thus, the issue is whether the VSI payments are, as Ronald contends, in the nature of severance and intended to compensate him for future lost earnings, or whether they are in the nature of deferred compensation or pension benefits, earned during the marriage and subject to division.

Ronald relies on *McClure, supra*, in support of his argument that VSI payments are paid in lieu of future income. *McClure* held:

> Given the Congressional intent behind the VSI program, VSI payments are more closely analogous to severance benefits than retirement benefits. . . . Like severance payments, VSI benefits attempt to compensate a separated service member for future lost wages. . . . The mere fact that the amount of the payments is determined according to the number of years of service does not necessarily render these payments compensation for past services. Rather, severance pay is frequently calculated according to the number of years of employment. Although severance pay received during the marriage is marital property to the same extent that wages paid during the marriage are marital property, severance payments intended to compensate for wages lost after the divorce cannot be characterized as marital property [citations omitted].[12]

As Martha points out, the view of the Ohio intermediate appellate court has gathered little acceptance. Indeed, most other jurisdictions that have examined the issue of the nature of either VSI payments or SSB payments have determined that they are "the functional equivalent of . . .

marital property any more than the worker's future earnings would be"); *Weakley v. Weakley*, Ky., 731 S.W.2d 243, 244 (1987) (personal injury award for impaired ability to earn wages is non-marital "[t]o the extent that the award can be prorated to the remaining years of life expectancy following the dissolution").

8. 98 Ohio App.3d 27, 647 N.E.2d 832 (1994).

9. *Reeves v. Reeves*, Ky.App., 753 S.W.2d 301, 302 (1988).

10. *Davis v. Davis*, Ky., 777 S.W.2d 230, 233 (1989).

11. *Mosley v. Mosley*, Ky.App., 682 S.W.2d 462, 463 (1985) (workers' compensation payments "which accrue and are paid after the dissolution of the marriage are not part of the

12. *McClure* at 841.

retired pay," [13] or "payment in lieu of retirement benefits," [14] and therefore constitute either marital, or community, property depending on the jurisdiction .[15] The analogy in *Blair v. Blair*,[16] likening incentive payments to early retirement, is typical of the rationale reached by the majority of the cases our research has revealed:

Like retirement, [husband's] eligibility for the SSB program was based on the number of years he served in active duty. . . . As with retirement pay, [his] separation pay was calculated according to the number of years he was in active service. . . . [He] could have remained on active duty for five more years and received retirement pay. Instead, he chose voluntary separation from the military and received his compensation at an earlier date. For the reasons we have stated, we characterize separation pay received under the Special Separation Benefits program . . . as an election for early retirement [citations omitted].

We are persuaded by the reasoning in these cases which have held, contrary to *McClure*, that the benefits for voluntary separation from the military are more closely akin to early retirement benefits than severance pay. Clearly, the manner in which the payments are calculated has the indicia of pension benefits, that is, a formula based on years of service and the level of pay at the time of separation from active duty. Further, as recognized in several jurisdictions, the payments are recouped by the government if the service member later becomes entitled to retirement benefits.[17]

That the separating officer must "repay" the benefits received under the SSB and VSI programs in order to receive retired pay (if he or she later becomes eligible to receive it), is strong evidence that SSB and VSI payments are a form of retired pay in the first instance. Specifically, if these benefits were intended to compensate for lost future income, they would not be subject to recoupment from retired pay.

. . .

Thus the payments received pursuant to the SSB and VSI programs cannot be likened to severance pay or, more specifically, compensation for lost future income. This makes practical sense. Because the benefits are received at the election of the separating member, the member accepts the risks associated with the transition into civilian life and may have already planned ahead for those risks by securing post-discharge employment in advance.[18]

---

13. *Kelson, supra* at 1372.

14. *In re Crawford*, 180 Ariz. 324, 884 P.2d 210, 212 (1994).

15. *See Fisher v. Fisher*, 319 S.C. 500, 504, 462 S.E.2d 303, 305 (1995) ("husband's early discharge under the VSI program is analogous to an early retirement . . . [because] any rights the husband now possesses to receive early discharge incentive payments are due to the time he spent in the military and accrued during his marriage to the wife"); *Marsh v. Marsh*, 973 P.2d 988, 991 (Ut.App.1999) (SSB determined to be "analogous to retirement pay"); *In re Heupel*, 936 P.2d 561, 569 (Colo. 1997) (VSI and SSB "are meant to compensate for the loss of the right to receive retired pay in the future whether characterized as a buyout, an advance, or deferred compensation for services already rendered"); *In re Babauta*, 66 Cal.App.4th 784, 78 Cal.Rptr.2d 281 (1998) (VSI and SSB benefits determined to be community property); *Marsh v. Wallace*,

924 S.W.2d 423, 426 (Tex.App.1996) (SSB "is not compensation for lost future wages but instead compensation for lost retirement pay earned in the past that [husband] voluntarily gave up receiving in the future"); *Pavatt v. Pavatt*, 920 P.2d 1074, 1076 (Okla.Civ.App. 1996) ("SSB payment is to be treated as a retirement plan asset"); *Kulscar v. Kulscar*, 896 P.2d 1206 (Okla.App.1995) (SSB payments are in lieu of retirement benefits); *In re McElroy*, 905 P.2d 1016 (Colo.App.1995) (SSB's are marital property).

16. 271 Mont. 196, 894 P.2d 958, 961–62 (1995).

17. *See* 10 U.S.C. § 1175(e)(3)(2000).

18. *Heupel, supra* at 571. *See also Wallace, supra* at 426 (recipient who later becomes eligible for retirement "has in effect received a prepayment on retirement pay because the retirement benefits are reduced by the

While *McClure* predicates its holding on what it perceives to be Congress's intent to provide severance payments for early separation from the military, other jurisdictions have developed a different perspective on the issue of legislative intent. For example, when presented with a "post enactment discussion draft" purported to provide authority for Congressional intent, the Court in *Crawford* explained:

> We find more relevant a 1990 House Report predating the enactment of the SSB program which in relation to the congressionally mandated "force drawdown" recommended "a comprehensive package of transition benefits to assist separating personnel and their families," H.R.Rep. No. 665, 101st Cong., 2d Sess. (1990), ... suggesting that equitable division of SSB benefits is not inconsistent with congressional intent.[19]

In *Heupel,* the Court reasoned that to allow the service-member spouse to unilaterally decide to participate in SSB and VSI programs, and thereby deprive their spouse of their future share of retirement benefits, would "undermine[ ] Congress's intent in legislating the USFSPA[20] and the SSB/VSI programs."[21]

Ronald attempts to distinguish the cases relied upon by Martha from *McClure,* by arguing that her authorities involved marital dissolutions which occurred before the service members' voluntary separation from the military and that the participants in the VSI or SSB programs were motivated by a desire to defeat the terms of an existing decree awarding retirement benefits to their former spouses. Ronald insists that his reasons for taking an early-out from the military did not include depriving Martha of her share of his retirement benefits. He correctly points out that the

trial court did not find him to have such a motive.

Nevertheless, we believe this distinction to be totally irrelevant to the issue of the nature of the asset, an issue which is determined by reference to the intent of Congress in establishing the programs, and to our statutory law and case law which define the parameters of marital property. The asset at issue is intended to be, and is in the nature of, either severance pay or early retirement. The proper characterization of the asset is not dependent upon the service member's motives, good or bad, for opting to take advantage of the programs. While several cases have, as discussed, held that allowing service members to defeat their former spouse's expectations with respect to retirement benefits would undercut the intent of Congress, the lack of such improper motivation does not otherwise transform the nature of the asset into Ronald's separate property. For the foregoing reason, we hold that the trial court did not err in characterizing the VSI payments as marital property.

■ Next, Ronald argues that the trial court erred in failing to allocate half of the marital debt to Martha. Specifically, he claims error in the trial court's refusal to require Martha to be responsible for repaying any portion of the $18,000 loan obtained from his brother, sums Ronald testified that he borrowed to maintain the marital residence.

■ In dividing the marital debts, the trial court assigned to Martha the entire debt owed to Bank of Boston, one-half the credit card debts owed to Citibank, Suntrust and Omni Credit Card Center as of

amount of the SSB payment") and, *McElroy, supra* at 1020 (the "pay-back provision also supports the trial court's determination that the SSB benefit is in lieu of retirement pay").

19. *Crawford, supra* at 212. *See also Wallace, supra* at 426 (SSB payments "are designed to 'assist separating personnel *and their families'*" and in that respect differ from pay-

ments made upon involuntary severance from the military) (emphasis in original).

20. Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 (1994).

21. *Heupel, supra* at 569.

December 1996; and all the credit card debt incurred after the parties' separation. Ronald was assigned the remaining one-half of the debts owed on the credit cards up to December 1996, and all the debt owed to his brother. In all, Martha was assigned marital debt of nearly $15,000, and Ronald was determined to be responsible for debt of about $25,000. As with the division of marital assets, the trial court has broad discretion in its allocation of marital debt. We are not persuaded that there was any abuse of that discretion in the case *sub judice.*

As to the final issue, Ronald alleges that the trial court erred in denying his request to a share of Martha's claim against Rachel's father for child support arrearages. Ronald argues that since Rachel lived with the parties for 16 years of her minority, years during which they did not receive any support from Rachel's father, he is entitled to share in any of the arrearages Martha may collect in an URESA [22] action she has filed in West Virginia. He further reasons that since an obligation to pay child support vests when it is due, the arrearages incurred during the marriage are marital property subject to division. Ronald has not cited this Court with any authority to support his theory that the claim for arrearages constitutes marital property. However, it is apparent that Martha's right to child support was acquired prior to her marriage to Ronald. Further, the support was intended to benefit Rachel, and not the parties to the marriage.

As a general rule, a step-parent owes no duty of support to a step-child. Instead, children of divorce are required to be supported by their parents.[23] The record indicates that Ronald, like many step-parents, voluntarily undertook to provide support to Rachel while she resided in his household. While Ronald's desire to be reimbursed for his contribution to Rachel's

support may be a reasonable one, we are unable to conclude that the trial court erred as a matter of law, or abused its discretion, in refusing to grant him any portion of the proceeds of the URESA action, if any proceeds should ever materialize.

Accordingly, the order and judgment of the Fayette Circuit Court are affirmed.

ALL CONCUR.

---

**22.** Uniform Reciprocal Enforcement of Support Act, KRS Chapter 407 *et seq.*

**23.** KRS 403.210.