RENDERED: JULY 12, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2023-CA-1098-MR

CHRISTINE COOPER                                                    APPELLANT

v.          APPEAL FROM FAYETTE CIRCUIT COURT
            FAMILY COURT DIVISION
            HONORABLE TRACI BRISLIN, JUDGE
            ACTION NO. 21-CI-02835

DONALD COOPER                                                       APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, EASTON, AND McNEILL, JUDGES.

EASTON, JUDGE: This appeal stems from a divorce action between Appellant,

Christine Cooper ("Christine") and Appellee, Donald Cooper ("Donald").

Christine questions the Fayette Family Court's assignment of credit card debt.

Having found no error, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Christine and Donald married in July 2009. Christine filed a Petition for Dissolution of Marriage in September 2021. The parties have no children together. In addition to this dissolution action, Christine also filed a small claims action against Donald (regarding personal property that was included in the division of assets in the dissolution action) and several petitions for Emergency Protective Orders ("EPO"), none of which were granted. Donald likewise filed an EPO petition, which was granted. He was subsequently granted a Domestic Violence Order ("DVO").[1] Pursuant to the DVO, Christine was ordered to vacate the marital residence, and she did so in April 2022.

Despite periodically having counsel,[2] Christine regularly filed *pro se* motions with the family court. In July 2022, Donald asked the family court to award him attorney's fees. The parties engaged in mediation twice, with no resolution reached. There were several short hearings regarding items of Christine's personal property which remained at the marital residence. Christine claimed Donald would not turn over her items, while Donald argued Christine refused to pick them up. A final hearing was scheduled for October 14, 2022.

---

[1] While these other cases are referenced in the dissolution hearings, nothing from the record of those cases was included for our review.

[2] Christine had hired three attorneys prior to her appellate counsel.

Christine appeared *pro se* at the final hearing, while Donald was represented. The parties testified as to their two parcels of real property and their equity, personal property, vehicles, bank accounts, retirement accounts, and credit cards. Both parties testified extensively as to the credit card debt both had incurred. Christine and Donald both carried multiple credit cards which were solely in their names; neither was an authorized user on the accounts of the other. The testimony indicated the parties generally put all their expenses, both marital and individual, on their credit cards. This led to multiple cards having substantial balances.

During the marriage, both parties had withdrawn funds from their individual retirement accounts to pay debt. Donald had also taken out loans on his retirement account, some of which still needed to be repaid. Both had withdrawn approximately $28,000 from their respective retirement accounts. Christine used this amount to pay off the credit cards in her name. At the time of the hearing, Christine had little to no credit card debt remaining. Donald had almost $20,000 of credit card debt.

In addition to testimony regarding the assets of the parties, the family court also took the necessary jurisdictional proof to grant the parties' divorce. The family court found the parties' credit card debt was entirely marital. It also found that Christine's retirement account was entirely marital, and it had been used to

pay off marital debt. Therefore, the family court ordered that the remaining credit card debt in Donald's name was to be split evenly between the parties. The court also indicated it would award Donald some amount of his requested attorney's fees, as it found Christine had caused most of the delay in the case. A written order memorializing the findings of fact and conclusions of law was entered on November 18, 2022.

Immediately after the order was entered, Christine obtained new counsel. Her counsel filed a response to Donald's affidavit of attorney's fees, as well as a motion to alter, amend, or vacate. The family court issued an order on January 26, 2023, vacating the findings of fact and conclusions of law regarding the allocation of marital property and debt. It did not disturb the decree of dissolution.

A hearing was scheduled for March 2023, but was rescheduled for a final hearing on July 17, 2023. On June 28, Christine filed a Motion for Recusal scheduled to be heard on July 14. The affidavit filed by Christine indicated she did not believe the family court judge could be neutral, based on her previous findings in Donald's favor.

The family court denied this motion. It indicated it believed this motion was a way to get around its clear directive that no more continuances would be granted. The family court additionally stated how rare it is for judges to

completely vacate previous orders, and that doing so should indicate its desire to be completely fair to Christine. The court further explained it was not able to get a clear picture of the parties' debts at the prior hearing, and therefore another hearing would be beneficial.

The second final hearing took place on July 17, 2023. This time, Christine was represented by counsel. While the family court was able to get some additional details about the parties' accounts and debts, the testimony was still not entirely clear. Regarding the parties' debt, the family court again determined all of Donald's credit card debt was marital and split it between the parties. An order was entered on August 3, 2023.

Christine then filed another Motion to Alter, Amend, or Vacate the family court's order regarding the division of the credit card debt. Said motion was denied, and this appeal followed.

**STANDARD OF REVIEW**

"[I]ssues pertaining to the assignment of debts incurred during the marriage are reviewed under an abuse of discretion standard." *Neidlinger v. Neidlinger*, 52 S.W.3d 513, 523 (Ky. 2001), *overruled on other grounds by Smith v. McGill*, 556 S.W.3d 552 (Ky. 2018). "The test for an abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound reasonable principles." *Penner v. Penner*, 411 S.W.3d 775,

-5-

779-80 (Ky. App. 2013). Appellate review of a trial court's factual findings is governed by the clearly erroneous standard; factual determinations supported by substantial evidence will not be disturbed. *Truman v. Lillard*, 404 S.W.3d 863, 868 (Ky. App. 2012). In evaluating abuse of discretion, this Court reviews legal conclusions applied by the trial court *de novo*. *Ehret v. Ehret*, 601 S.W.3d 508, 511 (Ky. App. 2020).

## ANALYSIS

As a preliminary matter, we note that Christine's brief fails to conform to Kentucky Rules of Appellate Procedure ("RAP") 32(A)(3) and (4). These rules require ample citations to the record in both the statement of the case and the argument sections of a brief. While Christine's brief makes some references to the written record, it contains no references to the hearings in this case.

"When an appellate advocate fails to abide by the appellate briefing rules, this Court has the option to: (1) ignore the deficiency and proceed with the review; (2) strike the brief or its offending portions, or (3) to review the issues raised in the brief for manifest injustice only, if the briefing deficiency pertains to the appellant's statement of preservation of error." *Swan v. Gatewood*, 678 S.W.3d 463, 469 (Ky. App. 2023) (citation omitted). However, "how to proceed in

-6-

imposing such penalties is a matter committed to our discretion." *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007).

"It is a dangerous precedent to permit appellate advocates to ignore procedural rules. Procedural rules do not exist for the mere sake of form and style. They are lights and buoys to mark the channels of safe passage and assure an expeditious voyage to the right destination. Their importance simply cannot be disdained or denigrated." *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (internal quotation marks and citations omitted). We elect to ignore the deficiency and proceed with review in this case, as the record is not a lengthy one. However, we advise counsel that this Court may not be so lenient in the future.

Christine takes issue with the family court's designation of Donald's credit card debt as marital debt and assigning half of it to her. Christine argues this debt should be assigned to Donald alone, since he was unable to provide specificity as to what amounts were incurred for a particular purpose.

Christine is correct in that there is no presumption that a debt incurred during the marriage is marital in nature. *Smith v. Smith*, 235 S.W.3d 1, 15 (Ky. App. 2006). "Debts incurred during the marriage are traditionally assigned on the basis of such factors as receipt of benefits and extent of participation, whether the debt was incurred to purchase assets designated as marital property, and whether the debt was necessary to provide for the maintenance and support of the family[.]

-7-

Another factor, of course, is the economic circumstances of the parties bearing on their respective abilities to assume the indebtedness." *Neidlinger*, *supra*, at 523 (citations omitted).

Both parties had multiple credit cards in their name. The overall testimony indicated that the standard practice during the marriage was to use credit cards for almost all purchases, regardless of whether it was for a marital or nonmarital purpose. Neither party was able to specify what all was paid on what credit card. Both parties testified they used their credit cards for regular household items, groceries, and general expenses. Likewise, they both testified as to instances where they used their credit cards to pay for things that would be deemed nonmarital, such as attorney's fees or for expenses for Christine's adult child who was not a child of this marriage.

This case is a perfect illustration of why property division components of dissolution actions should not be delayed. The parties were testifying as to purchases they made two years after the fact; it is no wonder they couldn't explicitly explain to the family court what was spent on what card, especially considering how many credit cards both parties possessed. People generally do not keep records of expenditures during a marriage with the expectation of having to justify it later in a divorce.

In the Findings of Fact after the first hearing in October 2022, the family court found that Christine had dissipated her marital retirement account to the tune of $18,528. The family court awarded half of that amount to Donald. It did not make this same finding in the order of August 2023. The family court determined the credit card debt of both parties included both marital and nonmarital aspects. Both parties withdrew marital funds from their retirement accounts to pay this debt. Neither party was able to testify specifically about what cards paid what debt. Because Christine's debt had been paid off by the time of the second hearing with marital funds, the family court ruled it would be unfair for Donald to be responsible for all the remaining credit card debt.

Christine cites *Rice v. Rice*, 336 S.W.3d 66 (Ky. 2011) as support for her contention that Donald's credit card debt should be shouldered by him alone. However, we find *Rice* to be quite distinguishable from the facts herein. The wife in *Rice* didn't even have knowledge that the credit card on which the debt was incurred even existed, let alone consent to the expenditures on it. The debt in *Rice* was incurred solely for the benefit of an adult child, not for any marital purpose. *Id*. at 69. It was the testimony of both parties herein that they each used multiple credit cards for almost every purchase, regardless of the nature of the purchase.

Christine's ultimate outcome improved from the first hearing to the second. In its initial October 2022 order, Christine was to receive $9,045.27.

After the order of August 2023, Christine was to receive $25,941.25. Considering all the evidence and the distribution of the property as a whole, we cannot say the family court abused its discretion in requiring Christine to pay half the credit card debt that remained at the final hearing. *See Smith*, *supra*, at 17; *Spratling v. Spratling*, 720 S.W.2d 936, 938 (Ky. App. 1986). "As with the division of marital assets, the trial court has broad discretion in its allocation of marital debt." *Lykins v. Lykins*, 34 S.W.3d 816, 822 (Ky. App. 2000).

Christine also makes a reference in her brief that the family court did not have sufficient evidence to assign Donald a portion of her pre-marital retirement account. However, she makes no specific arguments to support this, and she also did not include this issue in her motion to alter, amend, or vacate. Failure to mention an issue in a Rule 59 motion waives it. *Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005).

## CONCLUSION

The family court's findings of fact are supported by the evidence and not erroneous. The family court committed no error of law and properly acted within its discretion. The Fayette Family Court is AFFIRMED.

ALL CONCUR.

-10-

BRIEF FOR APPELLANT:

Corey M. Nichols
Lexington, Kentucky

BRIEF FOR APPELLEE:

Jennifer McVay Martin
Lexington, Kentucky