**TRINITY UNIVERSAL INSURANCE COMPANY, Plaintiff–Appellant and Cross–Appellee,**

v.

**Nicholas STREZA, d/b/a Western Summit Log Homes, Defendant–Appellee and Cross Appellant.**

**No. 99CA0294.**

Colorado Court of Appeals, Div. II.

July 20, 2000.

**614**

Senter Goldfarb & Rice, L.L.C., John D. Hayes, James S. Simko, Denver, Colorado, for Plaintiff–Appellant and Cross–Appellee.

James R. Alvillar & Associates, James R. Alvillar, Leslie A. Goldstein, Grand Junction, Colorado, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge JONES.

Plaintiff, Trinity Universal Insurance Company, appeals the judgment entered on a jury verdict against it and in favor of defendant, Nicholas Streza. We affirm in part, reverse in part, and remand the cause with directions.

This is a subrogation case arising out of a fire that destroyed a residence insured by Trinity. Trinity claims that it was defendant's negligence that caused the fire.

Defendant was hired to construct a residence for his sister-in-law and brother-in-law (the owners). While the residence was under construction, the owners were living nearby in a trailer. As part of a plan to provide water to the trailer, defendant placed a propane-fueled heater in the crawl space of the residence to keep water pipes from freezing.

When the first tank of propane ran out, defendant attached a full twenty-pound propane cylinder to the heater and dropped it a short distance into the crawl space. Later, defendant plugged an extension cord into an electrical socket, which resulted in an explosion and a fire that completely destroyed the residence.

The parties do not dispute that the twenty-pound propane cylinder was the probable source of the fuel that caused the explosion.

Trinity filed a complaint against defendant alleging: (1) negligence, (2) negligence *per se*, and (3) *res ipsa loquitur*. The trial court resolved certain issues by way of summary judgment. Thereafter, a jury rendered a verdict in favor of defendant on all claims and this appeal followed.

## I.

Trinity contends that, because defendant's use of fuel products violated a statute prescribing standards for such use, the trial court erred by entering judgment in favor of defendant and against it on its motion for partial summary judgment. We perceive no error.

A reviewing court must determine whether the moving party has made a clear showing that no issue of material fact exists and that it is entitled to judgment as a matter of law. A court must consider the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, in determining whether to grant a motion for summary judgment. C.R.C.P. 56(c).

Appellate review of a motion for summary judgment is *de novo*. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board*, 901 P.2d 1251 (Colo.1995). In making this determination, we must resolve all doubts as to the existence of a triable factual issue against the moving party and give the party against whom summary judgment is sought the benefit of all favorable inferences which may be drawn from the

facts. *Spencer Investments, Inc. v. Bohn,* 923 P.2d 140 (Colo.App.1995). A material fact is one that will affect the outcome of the case. *Moffat County State Bank v. Told,* 800 P.2d 1320 (Colo.1990).

## A.

Trinity first argues that it was error for the court to conclude that the provisions of §§ 8–20–405 and 8–20–411, C.R.S.1999 and National Fire Protection Association (NFPA) Standard No. 58 (1995 ed.) apply to commercial liquid petroleum gas operations and not to private individuals. We perceive no error.

■ To establish a claim for negligence *per se,* plaintiff must demonstrate: (1) that one of the purposes of the statute or ordinance was to protect against the types of injuries or losses that plaintiff sustained; (2) that the injuries suffered were of the kind the statute was enacted to prevent; (3) that the statute or ordinance proscribes or prescribes specific conduct; and (4) that the defendant violated the statute at issue.

■ Principles of statutory construction dictate that we first look at the plain meaning of the statutory language. *Canape v. Petersen,* 897 P.2d 762 (Colo.1995). In construing a statute, we assume that the legislative purpose is expressed by the ordinary meaning of the words used. Further, a statute should not be construed in a manner that would defeat its legislative intent. *City of Westminster v. Dogan Construction Co.,* 930 P.2d 585 (Colo.1997).

Section 8–20–405, C.R.S.1999, requires that those handling liquefied petroleum gases (LP-gases) conform to "the minimum standards ... prescribed by the applicable sections of the current edition of the national fire code published by the national fire protection association...." Plaintiff argues that defendant's conduct fell below the minimum prescribed standards of the NFPA code requiring that "qualified personnel" engage in handling liquid propane and the cylinders in which it is stored.

Although not a formal interpretation of the meaning of the NFPA standards, Lemoff, Theodore C., *The Liquefied Petroleum Gases Handbook* (4 th ed.1995)(handbook), sets out the opinion of recognized experts in the field of LP–Gases concerning the standards. Section 1–5 of the handbook, entitled "Qualification of Personnel," opines that "all persons employed in the handling of LP–Gases shall be trained in proper handling and operating procedures, which the employer shall document." The handbook, at page 23, also states:

> [I]ncidental use of LP–Gas in the performance of job requirements is beyond the scope of [NFPA 58] 1–5 and documentation of training is not needed. It does, however, apply to all employees engaged in liquid transfer and bulk storage of LP–Gas.

Thus, the recognized experts in the field of the safe handling of liquid petroleum concede that those who engage in the incidental use of such fuel products in, otherwise, non-related occupations, are beyond the scope of NFPA Standard No. 58, and are not considered "qualified persons" within the scope of the standard.

A note to NFPA Standard No. 58, dealing with the handling of liquefied petroleum gases, provides:

> [S]everal types of LP–Gas systems *are not covered* by the National Fuel Gas Code as noted in 1.1.1.(b) therein. These include, but are not restricted to, most portable applications: many farm installations: vaporization, mixing and gas manufacturing: *temporary systems, e.g., in construction:* and systems on vehicles. For those systems within its scope, the National Fuel Gas Code is applicable to those portions of a system downstream of an outlet of the first stage of pressure regulation. (emphasis added)

We note that the General Assembly has entitled Article 20 of Title 8 of the Colorado Revised Statutes "Fuel Products." Subsequent parts of the Article deal with certain specific fuel products. "Fuel Products" is defined as "all gasoline ... and other volatile and inflammable liquids produced, compounded, and offered for sale or used for the purpose of generating heat ... or for any similar usage." Section 8–20–201(2), C.R.S. 1999.

■ A court may consider the title of legislation under examination in resolving issues concerning the General Assembly's intent as to that legislation. *People v. Zapotocky*, 869 P.2d 1234 (Colo.1994); *City of Ouray v. Olin*, 761 P.2d 784 (Colo.1988); *see also People ex rel. Dunbar v. Gilpin Investment Co.*, 177 Colo. 132, 493 P.2d 359 (1972)(purpose of constitutional provision that subject of bill shall be clearly expressed in its title is to prevent surprise and deception among members of the General Assembly).

■ Generally, a "product" is something distributed commercially for use or consumption. *See* Restatement (Second) of Torts § 402A(1); *Smith v. Home Light and Power Company*, 695 P.2d 788 (Colo.App.1984)(electricity is "product," for purposes of products liability law; however, its distribution is a "service"). The Fuel Products statute, moreover, encompasses:

> [T]he design, construction, location, installation, and operation of liquefied petroleum gas systems and equipment, and the transportation and handling of liquefied petroleum gas, and the odorization of liquefied petroleum gas.

Section 8–20–405, C.R.S.1999.

The trial court found and concluded that: "Defendant was in the business of constructing a home for [Trinity's] insured.... The scope of [the Fuel Products] statute was addressed to commercial liquid petroleum operations, not individuals utilizing it in furtherance of a commercial enterprise or for their personal use and enjoyment." It went on to conclude that to extend the reach of the statute to the facts of this case would unduly expand the duty of care under the statute. We agree with the court.

■ The title of the statute and the plain language of § 8–20–405, make it clear that suppliers of propane products are covered by the statute. The statute does not, however, proscribe incidental use of propane such as under the circumstances here. An alleged violation of the statute, therefore, does not establish a breach of any duty owed by defendant here. *See Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913 (Colo.1997). Thus, the trial court did not err in concluding that the fuel products statute applies to commercial suppliers of propane and not to defendant's use under the circumstances here.

## B.

Plaintiff next contends that a disputed issue of material fact exists as to whether defendant's use of propane was for commercial or private purposes and that, therefore, the trial court erred in concluding, as a matter of law, that defendant was entitled to summary judgment. Again, we disagree.

Here, the defendant and the owners signed a written contract that reflected their oral agreement relative to construction of the house. The agreement contained a definitive list of specifications that made no mention of propane products.

Also, although the cost of the construction of the house included propane heaters, the list of specifications in the agreement did not include installation of propane piping systems or bulk storage of fuel products.

The record reflects that defendant's use of the propane was incidental to the construction of the residence and was not for the purpose of installing or operating LP-gas systems. The record, moreover, does not disclose evidence that defendant was employed in the operation of LP-gases. Indeed, the evidence established that the propane cylinder which was the source of the explosion was of the size that would "fit on a barbecue."

Under these undisputed circumstances, we conclude that defendant's use of the fuel products was incidental and was not for commercial purposes. Thus, the trial court did not err in concluding that there was no genuine issue of material fact.

## II.

Trinity also contends that the trial court erred in refusing to tender an instruction to the jury stating that handling or using propane gas is an inherently dangerous activity. We perceive no error.

■ The duty owed by a defendant is an issue of law which we review *de novo*. *Impe-*

*rial Distribution Services, Inc. v. Forrest,* 741 P.2d 1251 (Colo.1987).

Concerning negligence generally, the greater the risk, the greater the amount of care required to avoid injury to others. Thus, greater care may be required of one who dispenses a product in the stream of commerce when the product itself, by virtue of its inherent character, poses a high risk of injury to others. If an alleged tortfeasor is engaged in the business of supplying propane gas, the jury must be instructed that the highest degree of care is required for the distribution of propane. *Blueflame Gas, Inc. v. Van Hoose,* 679 P.2d 579 (Colo.1984).

Analogously, our supreme court has found the following compelling reasons to hold electric utilities to the highest degree of care: (1) electrical energy possesses inherently dangerous properties; (2) electric utilities possess expertise in dealing with electrical phenomena and in operating facilities for delivery of electricity; and (3) the general public is not able to recognize and guard against the dangerous potential of certain situations.

We have concluded above that defendant was not employed in the commercial operation or handling of LP-gases, and did not engage in selling or distributing LP-gas products. We also note that the record does not reflect that he had the professional expertise of one who does commercially handle and operate such fuel products. Thus, the trial court did not err in refusing to instruct the jury on the elements of inherently dangerous activities.

### III.

Trinity next contends that the trial court erred by prohibiting it from examining defendant's experts regarding alleged bias and prejudice in favor of defendant's insurer. We perceive no error.

The governing rule, CRE 411, provides:

Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

The standard for admission of evidence relating to bias or credibility is whether the evidence is sufficiently probative of the witness' bias and not unfairly prejudicial to the defendant. Bias is a state of mind and only those demands which can influence the mind at the moment of testifying are relevant to a demonstration of bias. *Bonser v. Shainholtz,* 983 P.2d 162 (Colo.App.1999), *rev'd on other grounds, Bonser v. Shainholtz,* 3 P.3d 422 (Colo.2000).

Here, one of defendant's experts was a part owner of a business that retained defendant's insurer, State Farm, as a client. He testified, however, that he has worked on "probably nearly as many [cases] against State Farm as I do for it...." The expert also testified that: "I may work one day in the morning for State Farm and that afternoon do a case against them. So my business is based on my findings, not who my client is. Everyone in the business knows that my findings are my findings whether they like them or not."

Evidence presented at one of the hearings held by the trial court pursuant to CRE 104 established that one of the experts who testified at trial was retained by both Trinity and State Farm "on an equal basis."

Under this state of the record, we conclude that the trial court did not abuse its discretion by refusing to permit Trinity to examine defendant's expert regarding possible biases that would have placed the subject of insurance before the jury.

### IV.

Trinity's final contention is that the trial court erred by awarding expert witness fees without holding an evidentiary hearing for the purposes of determining the reasonableness of the amount awarded. We agree.

As the prevailing party, defendant is entitled to his costs pursuant to C.R.C.P. 54(d); and § 13–16–122, C.R.S.1999, sets forth factors that the court should consider in awarding costs. *See Harvey v. Farmers Insurance*

*Exchange,* 983 P.2d 34 (Colo.App.1998)(list of allowable costs under § 13–16–122 is not exhaustive but illustrative).

The decisions whether to award expert witness fees and the amount to be awarded are within the sound discretion of the trial court, and its ruling will not be reversed on appeal absent clear abuse of discretion. An award of costs for expert witness fees must be reasonable. *American Water Development, Inc. v. City of Alamosa,* 874 P.2d 352 (Colo.1994).

A party who requests a hearing on the reasonableness of expert witness fees, as here, is entitled to a hearing. Sections 13–16–105 and 13–17–202, C.R.S.1999; *see Dunlap v. Long,* 902 P.2d 446 (Colo.App. 1995)(when reasonableness of expert fees is challenged, and hearing requested, challenging party entitled to evidentiary hearing on issue).

After a thorough review of the record, we agree with the trial court's conclusion that defendant's experts were critical to his case. Therefore, we remand to the trial court with directions to conduct an evidentiary hearing as to whether the award of costs for defendant's expert witness fees in the amount of $23,758.26 was reasonable.

Because the jury returned a verdict finding no liability against defendant on Trinity's claim for negligence, we find it unnecessary to address defendant's contention on cross-appeal that the trial court erred by tendering an instruction to the jury on the elements of *res ipsa loquitur.*

Accordingly, the judgment is affirmed in all respects except as to the award of costs as to expert witness fees. That portion of the judgment is reversed and the cause is remanded for further proceedings on that matter as set out in this opinion.

Judge NEY and Judge TAUBMAN concur.