Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2017 CO 93**

**No. 16SC134, <u>Laleh v. Johnson</u>—Contracts—Fees and Costs.**

The supreme court reviews the court of appeals' opinion affirming a trial court's order requiring a pair of litigants to pay a court-appointed accounting expert's post-settlement collection costs.  The trial court appointed the expert to help resolve the litigants' complex accounting claims, and the litigants signed an engagement agreement with the expert setting forth the scope of his services and payment.  After the expert commenced work, the litigants settled the case and the trial court dismissed the suit.  The expert then informed the trial court that the litigants refused to pay both his outstanding fees and his costs incurred post-settlement in attempting to collect the outstanding fees.  Relying on a provision in the engagement agreement stating that the litigants were responsible for payment of "all fees and expenses" to the expert, the trial court held that the expert was entitled to the post-settlement costs he incurred while trying to collect his outstanding fees.  The court of appeals disagreed with the trial court's interpretation of the engagement agreement, holding that the agreement was silent as to the expert's post-settlement collection costs, but it nevertheless affirmed the

trial court's award of the expert's post-settlement collection costs on the ground that the trial court had inherent authority to require the litigants to pay such costs.

The supreme court holds that a separate provision of the engagement agreement not previously considered by the trial court or the court of appeals authorized the trial court's award of the disputed post-settlement collection costs. The supreme court therefore affirms the award of these costs to the expert, albeit on different grounds.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2017 CO 93

**Supreme Court Case No. 16SC134**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA2033

**Petitioners:**

Khalil Laleh and Ali Laleh,

v.

**Respondents:**

Gary C. Johnson and Gary C. Johnson and Associates, LLC.

## Judgment Affirmed
*en banc*
October 2, 2017

**Attorneys for Petitioner Khalil Laleh:**
Evans Case, LLP
Larry Jacobs
  *Denver, Colorado*

Kimball & Nespor, P.C.
Charles J. Kimball
  *Arvada, Colorado*

**Attorneys for Petitioner Ali Laleh:**
Worstell & Associates
David Worstell
  *Denver, Colorado*

**Attorneys for Respondents:**
Evans & McFarland, LLC
Scott S. Evans
  *Greenwood Village, Colorado*

TNS & Associates, P.C.
Michael J. Norton
Katelyn B. Ridenour
  *Denver, Colorado*

**JUSTICE MÁRQUEZ** delivered the Opinion of the Court.

¶1     This case concerns a fee dispute between a pair of litigants and a court-appointed expert.  In 2012, Khalil Laleh brought a forcible entry and detainer action against his brother, Ali Laleh.  The litigation later grew so unwieldy that the trial court appointed Gary Johnson as an accounting expert (and later as a special master) to resolve the feuding brothers' complex accounting claims.

¶2     The Laleh brothers signed an engagement agreement with Gary C. Johnson and Associates, LLC, setting forth the scope of Johnson's services and payment.  Johnson commenced work, but before he completed his accounting reports for the trial court, the brothers settled their case and the court dismissed the suit.  Johnson later informed the trial court that Khalil and Ali refused to pay both his outstanding fees and his costs incurred post-settlement in attempting to collect the outstanding fees.  Following a hearing, the trial court issued an order ruling that Johnson's fees were reasonable, and that he was entitled to the post-settlement costs he incurred in trying to collect his outstanding fees.  In reaching the latter conclusion, the trial court relied on language in the engagement agreement stating that the Lalehs "are jointly and severally responsible for the timely and complete payment of all fees and expenses" to Johnson.  (Emphasis added.)

¶3     In a published, split opinion, the court of appeals affirmed the trial court's order ruling that the brothers were jointly and severally liable for Johnson's fees and costs. Laleh v. Johnson, 2016 COA 4, ¶ 58, ___ P.3d ___.  The panel majority disagreed with the trial court's interpretation of the agreement and instead concluded that the agreement was silent as to collection costs incurred after the case was dismissed.  Id. at

3

¶¶ 27–28. The majority nevertheless concluded that the trial court did not abuse its discretion in awarding Johnson's post-settlement collection costs, reasoning that the trial court had the inherent authority to require the brothers to pay such costs. Id. at ¶ 28. Judge Webb dissented on this point, arguing that an appellate court may not invoke the doctrine of inherent authority for the first time on appeal. Id. at ¶ 59 (Webb, J., concurring in part and dissenting in part).

¶4 We granted Khalil's and Ali's petitions for certiorari review.[1] Because we conclude that a separate provision of the engagement agreement authorized the award of the disputed post-settlement collection costs, we affirm the award of these costs to Johnson, albeit on different grounds.

## I. Facts and Procedural History

¶5 Brothers Khalil Laleh and Ali Laleh each own multiple small businesses—primarily convenience stores and gas stations. For years, the brothers commingled hundreds of thousands of dollars between themselves and their businesses and kept few financial records of these dealings. In 2012, Khalil brought an action against Ali in county court for forcible entry and detainer alleging that Ali failed to pay rent on a leased commercial space. After Ali responded with counterclaims that sought sums

---

[1] We granted certiorari to review the following reframed issue:

> Whether the court of appeals erred in affirming the trial court's order directing the parties to pay for collection-related costs and fees incurred by a court appointed expert and special master after the case was dismissed.

exceeding the county court jurisdictional limit, the case was removed to the Jefferson County District Court ("the trial court").

¶6     By the time the court barred the parties from filing further claims, the contentious case had expanded to involve at least thirteen claims, nine parties, and six attorneys. Seven of these claims concerned the brothers' commingled funds. The trial court issued several orders to organize the parties' claims and to preclude further "sue first, ask questions later" claims.[2] After requesting suggested names from the parties, the trial court appointed Gary Johnson as an accounting expert "to untangle the parties' finances" and ordered that Khalil and Ali each pay one-half of Johnson's fees.

¶7     Each brother signed an engagement agreement with Gary C. Johnson and Associates, LLC, setting forth the scope of Johnson's services and the brothers' obligation for payment. Relevant here, the agreement provided that Johnson would "continue as expeditiously as possible until [Johnson] completed [his] services, or [has] been instructed by [the brothers] to discontinue." Next, the brothers agreed they were "jointly and severally responsible for the timely and complete payment of <u>all fees and expenses</u> of [Johnson]" (the "Fees" provision). (Emphasis added.) The brothers also agreed to pay Johnson's "reasonable out-of-pocket expenses." The agreement provided

---

[2] The trial court expressed its frustration with this litigation in several of its orders, noting that "the manner in which the parties have conducted this litigation . . . will result in a modern day <u>Jarndyce v. Jarndyce</u> in which the court system itself will be subject to embarrassment and ridicule"; that the case had "rapidly spun out of control" and the pleadings were "impossible to follow"; and that, "never, in the hundreds of civil cases which this court has handled over its years on the bench, has the court found it necessary to draft orders such as these."

that periodic invoices would be issued to the brothers, and that the brothers were required to communicate any disagreement with an invoice in writing within thirty days of the invoice date. Finally, under the paragraph titled "Governing Law and Jurisdiction," the agreement provided that, "[t]he prevailing party in any dispute is entitled to an award of reasonable attorney fees, costs and expenses."[3]

¶8 Soon after Johnson began work in late September 2013, he had difficulty obtaining requested information from the brothers' former counsel. In December 2013, without objection from the brothers, the court appointed Johnson as a special master under C.R.C.P. 53 to authorize him to obtain the requested information.

¶9 Johnson continued to encounter significant resistance from the brothers, their counsel, and other witnesses. He ultimately retained his own counsel to assist his investigatory efforts and informed the brothers' counsel that he had done so. The brothers did not object. Johnson began billing the brothers for the cost of his counsel in January 2014, and the brothers paid subsequent invoices without protest.

¶10 On February 7, 2014, the brothers settled the case and directed Johnson to stop his work. The court granted the brothers' joint request to dismiss all claims on February 24, 2014. When Johnson ceased his work in early February, he had reviewed more than 12,000 pages of material and his report was 120 pages long. The trial court later noted that it was clear that the resolution of the brothers' claims "was attributable to the work

---

[3] Neither the parties nor the courts below noted this provision, as we discuss in the analysis below.

of Mr. Johnson, who no doubt was able to make sense . . . of the parties' financial dealings."

¶11    Several weeks after the brothers had reached a settlement, Johnson notified the trial court that the brothers were refusing to pay Johnson approximately $74,000 in outstanding fees. The trial court issued an order to show cause why judgment should not enter against the brothers for Johnson's unpaid fees. For the first time, the brothers objected to Johnson's fees and itemized expenses as unreasonable.

¶12    Following an evidentiary hearing on the reasonableness of Johnson's fees, the trial court issued an order dated September 2, 2014, directing the brothers to pay all of Johnson's fees. The court rejected the brothers' challenge to fees incurred after February 7, when they reached a settlement. It reasoned that Johnson's post-settlement fees represented the costs of collecting his past-due fees from the brothers and the costs of preparing for the evidentiary hearing. The trial court concluded that these post-settlement fees were encompassed in the "all fees and expenses" language in the Fees provision of the agreement. The trial court also rejected the brothers' objection to paying for Johnson's legal fees, reasoning that "it was necessary for Mr. Johnson to retain counsel to complete the task required of him" and that his legal fees were thus also encompassed in the Fees provision of the agreement. Finally, the trial court rejected the brothers' contention that Johnson's subsequent appointment as special master changed his contractual relationship with them. After requesting a final billing from Johnson, the trial court entered judgment in favor of Johnson on September 16, 2014, in the amount of $114,411.14, jointly and severally against Khalil and Ali.

¶13     The brothers appealed the trial court's judgment granting all fees and costs to Johnson.  At oral argument before the court of appeals, the brothers conceded that the pre-settlement fees—approximately $74,000 due at the time of their settlement—remained unpaid.

¶14     In a published decision, the court of appeals affirmed in relevant part.[4]  Laleh v. Johnson, 2016 COA 4, ___ P.3d ___.  The panel held unanimously that the brothers waived any objection to Johnson's attorney fees for pre-settlement work performed by his counsel, reasoning that the brothers "did not timely challenge Johnson's hiring of a lawyer" and previously paid at least some invoices that included items for Johnson's attorney fees.  Id. at ¶¶ 19–21.

¶15     Turning to the trial court's award of post-settlement fees and costs, the panel majority disagreed with the trial court that the "all fees and expenses" language in the Fees provision of the agreement applied to costs that Johnson incurred post-settlement in attempting to collect his past-due fees.  Id. at ¶¶ 24–25.  The majority concluded that the agreement was silent with respect to collection costs.  Id. at ¶¶ 25, 27.  The majority nonetheless concluded that the trial court acted within its inherent authority to award such costs.  Id. at ¶¶ 28–33.  The majority acknowledged that it had found no case in

---

[4] The court of appeals also concluded that the trial court violated C.R.C.P. 121, § 1-16, when it granted Johnson's proposed order on fees and costs on September 16, only three days after the proposed order was filed and served on the brothers.  Laleh, ¶¶ 9–11; see C.R.C.P. 121, § 1-16 (granting a party seven days to object to a proposed order). The court of appeals therefore vacated the trial court's September 16 order and remanded for consideration of the brothers' objections to Johnson's proposed order. Laleh, ¶ 11.  This aspect of the court of appeals' ruling is not before this court.

Colorado that explicitly allows a court, "as a valid exercise of its inherent powers, to award costs incurred in the collection of fees of a court-appointed expert or special master." Id. at ¶ 31. The majority nevertheless reasoned that the trial court's award of post-settlement collection costs was "an order which serve[d] to give effect to the trial court's earlier order that the fees be paid" and was thus "within the trial court's inherent authority to administer justice and to make its actions effective." Id.

¶16    Judge Webb dissented on this point, arguing that the inherent authority doctrine should not be applied for the first time on appeal to affirm the trial court's order that the brothers pay Johnson's post-settlement costs. Id. at ¶ 59 (Webb, J., concurring in part and dissenting in part). Judge Webb observed that "the exercise of inherent power is a matter of discretion," id. at ¶ 70, and noted that the trial court did not mention the doctrine, nor did Johnson rely on it below, id. at ¶ 69. Judge Webb reasoned that it was not possible to know whether the trial court would have exercised its inherent authority had it concluded that the agreement did not address collection costs. Id. at ¶ 70. Recognizing that the case ordinarily should be remanded under such circumstances for the trial court to exercise its discretion, id. at ¶ 71, Judge Webb nevertheless concluded that remand here would be futile because he agreed with the panel majority that the agreement did not authorize collection costs. Id. at ¶¶ 72–74. He therefore would have reversed the trial court's order as "an unlawful modification of a valid contract." Id. at ¶ 75.

¶17    Khalil and Ali both petitioned for certiorari review.

9

## II.  Standard of Review

¶18    The decision to award an expert witness's or a master's costs is within the trial court's sound discretion.  See CRE 706(a); Am. Water Dev., Inc. v. City of Alamosa, 874 P.2d 352, 389 (Colo. 1994) (holding that the trial court did not abuse its discretion by awarding expert witness fees); C.R.C.P. 53(a); Rasheed v. Mubarak, 695 P.2d 754, 759 (Colo. App. 1984) ("With respect to . . . the trial court's assessment of masters' costs, we find no abuse of discretion.").  A trial court's award of costs for an expert or a master will not be disturbed on appeal absent clear abuse of discretion.  See Trinity Universal Ins. Co. v. Streza, 8 P.3d 613, 619 (Colo. App. 2000).  The interpretation of a contract, however, is a question of law we review de novo.  Fed. Deposit Ins. Corp. v. Fisher, 2013 CO 5, ¶ 9, 292 P.3d 934, 937.

## III.  Analysis

### A. Experts and Special Masters

¶19    CRE 706(a) permits a trial court to appoint expert witnesses "agreed upon by the parties" or "of its own selection."  Court-appointed expert witnesses are "entitled to reasonable compensation in whatever sum the court may allow," and in civil actions, "the compensation shall be paid by the parties in such proportion and at such time as the court directs."  CRE 706(b).

¶20    C.R.C.P. 53(a) authorizes a trial court to appoint a special master.  A master has broad authority to "regulate all proceedings in every hearing before the master and to do all acts and take all measures necessary or proper for the efficient performance" of his duties, including requiring the production of evidence and calling and examining

witnesses and the parties under oath. C.R.C.P. 53(c). The master's compensation "shall be fixed by the court, and may be charged upon such of the parties." C.R.C.P. 53(a).

## B. The Inherent Authority Doctrine

¶21 Courts have certain inherent powers to carry out their duties, including:

> [A]ll powers reasonably required to enable a court to perform efficiently its judicial functions, to protect its dignity, independence, and integrity, and to make its lawful actions effective. These powers are inherent in the sense that they exist because the court exists; the court is, therefore it has the powers reasonably required to act as an efficient court.

Pena v. Dist. Court, 681 P.2d 953, 956 (Colo. 1984) (emphasis in original) (quoting Jim Carrigan, Inherent Powers and Finance, Trial, Nov.–Dec. 1971, at 22); see also Kort v. Hufnagel, 729 P.2d 370, 373 (Colo. 1986). However, the inherent power of courts is not unlimited, and courts must proceed "cautiously" when invoking the inherent authority doctrine. Pena, 681 P.2d at 957. "The need which causes a court to invoke such powers must be reasonably necessary for its proper functioning, and this determination is subject to appellate review." Id.

¶22 Khalil argues that the inherent authority doctrine does not authorize an award of post-settlement collection fees for a court-appointed expert or special master. He contends that a court's inherent authority is limited to protecting the court's "core functions" and asserts that Johnson's "collection fees and costs implicate . . . none of [a court's] core functions." Khalil also argues that once a case has been dismissed, a court's inherent authority is limited to imposing sanctions for bad-faith behavior, which he contends is not at issue here. Alternatively, Khalil adopts Judge Webb's argument

11

that the panel majority erred in invoking the inherent authority doctrine for the first time on appeal.[5]

¶23    Ali joins in Khalil's arguments, and further contends that the contract's Fees provision "expressly disallows" Johnson's award of post-settlement collection costs. He argues that the meaning of "fees" is limited by what the contract defines as "services" and that Johnson's "services" ended when the brothers notified him of their settlement agreement on February 7, 2014.

¶24    We conclude that we need not address these arguments and, more generally, the inherent authority doctrine. Rather, we affirm the trial court's award of post-settlement collection costs to Johnson on other grounds. See People v. Aarness, 150 P.3d 1271, 1277 (Colo. 2006) (this court may affirm the trial court's judgment "on any ground supported by the record, whether relied upon or even considered by the trial court."); cf. Farmers Grp., Inc. v. Williams, 805 P.2d 419, 428 (Colo. 1991) (trial court's judgment may be defended on any ground supported by the record, so long as the party's rights are not increased under the judgment).

---

[5] Khalil also argues that the trial court intended for Khalil and Ali to each be responsible for one-half of Johnson's fees and costs and that the court of appeals erred in holding that the trial court had discretion to impose joint and several liability on the brothers. See Laleh, ¶¶ 44–45. We agree with Johnson that this issue is not properly before this court. Neither Khalil nor Ali challenged the court's imposition of joint and several liability in their petitions for certiorari review, and we did not grant certiorari to review the imposition of joint and several liability here. See Mercantile Adjustment Bureau, L.L.C. v. Flood, 2012 CO 38, ¶ 27 n.8, 278 P.3d 348, 357 n.8 ("We did not grant certiorari to review the reasonableness of the attorneys' fees and statutory damages awarded by the court to Flood. Therefore, it is not properly before us for consideration.").

¶25    We hold that the court of appeals erred in reaching the inherent authority doctrine because it was not necessary to do so.  See Laleh, ¶¶ 22–33.  As we explain next, a separate provision of the engagement agreement authorized the trial court's order requiring the Laleh brothers to pay Johnson's disputed post-settlement collection costs.

### C.  The Contract's "Governing Law and Jurisdiction" Provision

¶26    Although the trial court based its order exclusively on the "all fees and expenses" language in the Fees provision of the engagement agreement, we instead conclude that the language in the "Governing Law and Jurisdiction" section of the agreement authorized the trial court to order the brothers to pay the disputed post-settlement collection costs.

¶27    Under the paragraph titled "Governing Law and Jurisdiction," the agreement provides that "[t]he prevailing party in any dispute [between Johnson and the brothers] is entitled to an award of reasonable attorney fees, costs and expenses."  Johnson's recovery of his post-settlement collection costs satisfies each component of this provision.

¶28    First, the issue here is undoubtedly a "dispute" between Johnson and the brothers.  Although the underlying litigation was between Khalil and Ali, the issue before us arose when Johnson sought the trial court's help in collecting his outstanding fees and costs from the brothers.  In response, the brothers challenged the reasonableness of Johnson's outstanding fees.

13

¶29 Second, Johnson is the "prevailing party" in this dispute. In its September 2, 2014 order, the trial court ruled that the brothers were responsible for Johnson's fees and costs up to and including the evidentiary hearing and ordered the brothers to pay those sums. The trial court found credible Johnson's testimony that he was, "in large part, responsible for the resolution of the parties' claims against one another" and concluded that Johnson "met his burden of establishing that his hourly rates and the hours expended on the parties' case were reasonable." The court rejected all of the brothers' challenges to Johnson's claims for his fees and costs.

¶30 Third, Johnson's post-settlement fees and collection costs were "fees, costs and expenses" covered by the language in the "Governing Law and Jurisdiction" provision of the agreement. As the trial court explained, the fees and costs incurred after the brothers settled their dispute "were incurred for the purpose of collecting the sums which were due for work which had been performed prior to February 7." It follows that the time Johnson spent attempting to collect his outstanding fees, including preparing for the evidentiary hearing, constituted "costs and expenses" incurred in litigating his dispute with the brothers. Similarly, we conclude that Johnson's legal fees constituted "reasonable attorney fees, costs and expenses" incurred as a result of his post-settlement dispute with the brothers. Therefore, Johnson's post-settlement legal fees were also encompassed by the "Governing Law and Jurisdiction" provision.

¶31 In sum, we hold that the language in the "Governing Law and Jurisdiction" provision of the agreement authorized the trial court to order the brothers to pay the disputed post-settlement collection costs at issue here.

14

## III. Conclusion

¶32    For the foregoing reasons, we conclude that the engagement agreement authorized the trial court's order requiring the Laleh brothers to pay Johnson's disputed post-settlement collection costs.  We therefore affirm the judgment of the court of appeals, albeit on different grounds, and remand the case to that court for further proceedings consistent with this opinion.