24CA0141 Marriage of Bell 05-01-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0141
Boulder County District Court No. 22DR30458
Honorable Nancy W. Salomone, Judge

---

In re the Marriage of

Charles Robert Bell,

Appellant,

and

Alyson Bell,

Appellee.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE JOHNSON
Lipinsky and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 1, 2025

---

Charles Robert Bell, Pro Se

Aitken Law, LLC, Sharlene J. Aitken, Denver, Colorado, for Appellee

¶ 1 In this dissolution of marriage case between Charles Robert Bell (husband) and Alyson Bell (wife), husband appeals those portions of the permanent orders concerning the marital property division, maintenance, child support, and attorney fees. We affirm the judgment as to the property division, maintenance, and child support; reverse the judgment as to attorney fees; and remand the case for further proceedings concerning the attorney fees awarded to wife and wife's request for appellate attorney fees.

## I. Background

¶ 2 In 2022, the parties jointly petitioned to dissolve their marriage of nearly twenty-one years. The district court held a permanent orders hearing in August 2023.

¶ 3 In October 2023, while the parties were still waiting on the permanent orders, wife filed a motion seeking to enforce the temporary automatic injunction under section 14-10-107(4)(b), C.R.S. 2024. Wife alleged that, since the permanent orders hearing, husband had, without her consent, withdrawn a total of $36,854.61 from the marital home's home equity line of credit (HELOC). Accordingly, wife requested that the court account for the marital home's reduced equity in the permanent orders.

1

¶ 4     The court issued the permanent orders shortly thereafter.  In dividing the marital property, the court awarded husband his business, Tool Studios, at a value of $305,000.  The court awarded wife the marital home and its $470,103 in equity.

¶ 5     As an equalization payment, the court ordered wife to pay husband $82,592.  The court, however, recognized that husband had subsequently reduced the equity in the marital home via his $36,854.61 HELOC withdrawal.  Accordingly, the court ordered that wife could offset the amount that husband withdrew from the HELOC against the equalization payment, in accordance with the instructions in the court's concurrently issued order on wife's motion to enforce the injunction.

¶ 6     In that concurrent order, the court found that husband had withdrawn $36,854.61 from the HELOC and used approximately $17,000 of such funds to pay off a previously undisclosed credit card account.  The court also found that approximately $22,000 of the HELOC funds had, at one point, been deposited into the parties' joint bank account, which was being divided in the permanent orders.  Therefore, the court explained that "[t]he explicit intent of the Permanent Orders [wa]s to reduce Husband's equity payment

2

from Wife by the total amount withdrawn from the HELOC and not reimbursed." The court ordered the parties to confer, and if they could not agree on an adjustment to the equalization payment, to file a joint position statement for the court to review.

¶ 7 Wife thereafter filed a C.R.C.P. 59(a) motion in which she asserted that the equalization payment should be reduced by the entire $36,854.61 HELOC withdrawal and sought an order requiring husband to pay the interest on the HELOC until she could assume the related mortgage loan. Husband responded that he had used $18,000 of the HELOC funds to pay wife's expenses and therefore the equalization payment should only be reduced by approximately $18,800 not attributable to wife, with the parties splitting any interest expenses.

¶ 8 In its order resolving wife's C.R.C.P. 59(a) motion, the district court stated that it had attempted to address the HELOC in both the permanent orders and its concurrent order by requiring the parties to confer as to what extent the HELOC funds had ultimately been split in permanent orders via the division of the parties' joint bank account. The court explained that it intended to adjust the

3

equalization payment owed by wife to account for any HELOC funds that she had received via the marital property division.

¶ 9     The court noted that neither party had filed a joint position statement concerning the HELOC funds. But the court nevertheless rejected husband's contention that, because wife benefited from the HELOC withdrawal, she should share in the interest expenses and the equalization payment should be decreased by only $18,800 as opposed to the full amount of the HELOC withdrawal. The court reasoned that husband had used at least some of the HELOC funds to pay down debt that was allocated to him in the permanent orders and that, even if wife benefited somewhat from the HELOC withdrawal, requiring her to be responsible for a corresponding portion of the debt would reward husband's unilateral violation of the injunction. Therefore, the court ordered that to "effectuate the intentions" of its prior orders, "Husband shall carry the HELOC and shall make the monthly HELOC interest payments pending Wife's assumption of the loan and HELOC."

¶ 10    In the permanent orders, the court also ordered husband to pay $15,000 of wife's attorney fees and, based on its finding that

husband earned $16,433 per month, awarded wife maintenance and child support in the amounts of $3,000 and $1,283 per month, respectively.

## II. Valuation of Tool Studios and Determination of Husband's Income for Maintenance and Child Support

¶ 11    We first consider and reject husband's contentions that the district court erred when (1) valuing Tool Studios and (2) determining his income based on Tool Studios.

### A.    Valuation of Tool Studios

¶ 12    Husband contends that the court erroneously relied on the opinion of wife's valuation expert, who did not fully discount Tool Studios' 2020 income even though such income was an outlier.

#### 1.    Standard of Review and Applicable Law

¶ 13    The court has latitude to equitably divide the marital estate based on the facts and circumstances of the case, and we will not disturb its decision absent a showing that the court abused its discretion. *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 28. "A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misconstrues or misapplies the law." *In re Marriage of Fabos*, 2022 COA 66, ¶ 16.

¶ 14     When dividing marital property, the court determines the property's approximate current value. *In re Marriage of Wright*, 2020 COA 11, ¶ 4. In doing so, the court may select one party's valuation over that of the other party, or it may determine its own reasonable value. *Medeiros*, ¶ 41. We will not disturb the court's value determination if its decision is reasonable in light of the evidence as a whole. *Id.*

### 2.     Analysis

¶ 15     The parties' joint expert opined that, as of April 2023, Tool Studios had an investment value of $218,000 and a fair market value of $207,000. The joint expert explained that his valuations did not consider at all the company's 2020 finances because, in that year, the company had a large, one-time client, which increased the company's revenue from approximately $600,000 to $1,500,000. Therefore, the joint expert regarded Tool Studios' 2020 figures as an outlier because "the [c]ompany has not demonstrated the ability to secure similarly large projects, even on an infrequent basis."

¶ 16     Wife's rebuttal expert largely agreed with the joint expert's methodology. But wife's expert explained that he did not believe it

was appropriate to entirely omit the 2020 figures from the valuation, even though they were an outlier. Instead, wife's expert testified that it was more reasonable to include the 2020 figures, while assigning that year a lesser weight when averaging the most recent five years of Tool Studios' adjusted net income.

¶ 17 Wife's expert further opined that, based on the company's history of outsourcing labor, Tool Studios was capable of "scaling its operations to meet the needs of all of its clients, both large and small," and he stated that, over the course of the company's twenty-one-year history, Tool Studios had a large client approximately once every three years. After including the 2020 figures in the valuation, wife's expert testified that Tool Studios' investment value was $305,000 as of April 2023.

¶ 18 The district court agreed with wife's expert and valued Tool Studios at $305,000. The court explained that it found the opinion of wife's expert to be more "nuanced" than that of the joint expert, and that it was not appropriate to entirely exclude the 2020 figures as an outlier given "Tool Studios' demonstrated capacity to scale operations to accommodate larger clients."

¶ 19    Husband disagrees with the district court's valuation of Tool Studios. On appeal, husband contends that the company's bookkeeping numbers are unreliable because mother — Tool Studios' prior bookkeeper — has an interest in the litigation. This argument appears to encompass three main points. First, Husband suggests that the valuations are unreliable because the joint expert testified the company's books were a "mess." Second, husband argues that the court abused its discretion by adopting a value that in any way relied on Tool Studios' 2020 figures. Finally, husband argues that the court ignored the fact that wife would no longer be serving as Tool Studios' bookkeeper, which would also diminish its value.

¶ 20    As to husband's first contention — that the bookkeeping figures were unreliable — both experts noted that the state of the books was not uncommon for those of a small business. And it was within the district court's sole discretion to weigh such concerns in determining the probative value of the expert reports. *See In re Marriage of Lewis*, 66 P.3d 204, 207 (Colo. App. 2003). This segues into our rejection of husband's second argument, as the court was persuaded by the detailed testimony of wife's expert that it was

proper to include the 2020 figures by partially discounting them, rather than not relying on them at all as the joint expert did, resulting in wife's experts' $305,000 valuation.  Finally, the court concluded that a bookkeeper was "not a unique or irreplaceable business role," and we perceive no error in that commonsense observation.

¶ 21   Husband highlights other evidence in support of a lesser valuation of Tool Studios, such as the joint expert's testimony and husband's own testimony as to Tool Studios' value.  But in determining value, it was for the district court to resolve the conflicts in the evidence and determine the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom.  *See id.*; *see also In re Marriage of Bookout*, 833 P.2d 800, 804 (Colo. App. 1991) ("The weight to be accorded to the valuation techniques of an expert is for the [district] court's determination . . . .").  Thus, we will not reweigh the evidence or set aside the court's findings when, as here, the record supports them.  *See In re Marriage of Evans*, 2021 COA 141, ¶ 45.

¶ 22   The district court therefore did not err by finding that Tool Studios was worth $305,000.

### B. Husband's Income

¶ 23 For similar reasons, husband argues that the district court erred in determining his income for maintenance and child support purposes. We are again not persuaded.

#### 1. Standard of Review and Applicable Law

¶ 24 When awarding maintenance and child support, the district court must make findings concerning the parties' gross incomes. § 14-10-114(3)(a)(I)(A), (8)(c)(I), C.R.S. 2024 (maintenance); § 14-10-115(3)(c), (5)(a)(I), C.R.S. 2024 (child support). We review a court's maintenance and child support orders for an abuse of discretion, and, in doing so, we will not disturb the court's factual findings unless they are unsupported by the record. *In re Marriage of Schaefer*, 2022 COA 112, ¶ 8.

#### 2. Analysis

¶ 25 Crediting the testimony of wife's expert that the 2020 Tool Studios figures should be included in a five-year weighted average of husband's income, the district court found that husband earned $16,433 per month. Husband argues that the court should have excluded the 2020 figures. But once again, weighing and resolving the conflicts within the evidence was within the district court's

discretion, and we perceive no abuse of that discretion given the testimony of wife's expert. *See Lewis*, 66 P.3d at 207; *Schaefer*, ¶ 8.

¶ 26     We also reject husband's assertion that, by using the 2020 figures when averaging his income, the district court somehow imputed him income, which required an initial finding that he was voluntarily underemployed. Husband concedes that his self-employment income varied from year to year, and it is well established that, when there is substantial fluctuation or conflicting evidence regarding income, the court may consider past earnings and average such earnings to determine a party's current income. *See In re Marriage of Capparelli,* 2024 COA 103M, ¶ 32. Thus, husband's suggestion that the court improperly imputed him income when it took into consideration the 2020 figures, instead of strictly looking at his current income, is without merit.

¶ 27     Finally, we disagree with husband's suggestion that the district court erred in determining his income because the court ignored Tool Studios' payment of wife's personal expenses. While husband generally testified that Tool Studios paid some of wife's expenses during the divorce, such as her legal fees, rent, and general living expenses, the court was free to credit or disregard his

11

testimony. *See In re Marriage of Amich*, 192 P.3d 422, 424 (Colo. App. 2007) (The court "can believe all, part, or none of a witness's testimony, even if uncontroverted, and its resolution of conflicting evidence is binding on review."). And husband did not otherwise provide the court with any specific dollar figure for the expenses attributable to wife that he claims should have been subtracted from his income. *See In re Marriage of Krejci*, 2013 COA 6, ¶ 23 (parties must present relevant evidence to the court, and their failure to do so does not provide grounds for reversal). Therefore, we conclude that the court did not improperly calculate husband's income for purposes of determining the amounts husband must pay for maintenance and child support.

## III.  Post-Decree HELOC Debt

¶ 28    Husband next asserts that the district court erred when, in the permanent orders and its order on wife's C.R.C.P. 59(a) motion, it held him responsible for the balance of the monies husband withdrew from the HELOC after the permanent orders hearing. Specifically, husband asserts that the district court's orders concerning the HELOC were not supported by the record and otherwise resulted in a windfall to wife. We disagree with husband,

12

although for reasons different than those on which the district court relied. *See Laleh v. Johnson*, 2017 CO 93, ¶ 24 (recognizing that we may affirm the district court's judgment on any ground supported by the record, whether relied upon or even considered by the district court).

### A.     Standard of Review and Applicable Law

¶ 29     We review both the marital property division and the district court's ruling on wife's C.R.C.P. 59(a) motion for an abuse of discretion. *In re Marriage of Balanson*, 25 P.3d 28, 35 (Colo. 2001); *Top Rail Ranch Ests., LLC v. Walker*, 2014 COA 9, ¶ 74.

¶ 30     Section 14-10-113(1), C.R.S. 2024, provides that the district court "shall set apart to each spouse his or her property and shall divide the marital property." In turn, section 14-10-113(2)(c) defines marital property as "all property acquired by either spouse subsequent to the marriage" *except for* "[p]roperty acquired by a spouse after a decree of legal separation." *See also* § 14-10-113(3) ("[A]ll property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property."); *In re Marriage of Jorgenson*, 143 P.3d 1169, 1172 (Colo. App. 2006) (The "[a]llocation of marital debts is in the

nature of property division," and therefore, "debts, as well as assets, must be classified as marital or separate."). In addition, marital property must be valued as of the earlier date of the decree or the hearing on the property disposition. § 14-10-113(5); *In re Marriage of Finer*, 920 P.2d 325, 331 (Colo. App. 1996).

¶ 31    Accordingly, the district court may only divide assets or debt "existing at the time of dissolution," *In re Marriage of Lockwood*, 971 P.2d 264, 267 (Colo. App. 1998), meaning that assets or debt acquired post-decree "are not considered marital property and, thus, are not distributable," *In re Marriage of Heupel*, 936 P.2d 561, 572 (Colo. 1997); *cf. In re Marriage of Collins*, 2023 COA 116M, ¶ 25 ("[A]fter the court dissolves the marriage, the marital assets allocated to each spouse become that spouse's separate property."); *In re Marriage of de Koning*, 2016 CO 2, ¶ 29 ("After [the] decree is issued, the parties are no longer married . . . .").

## B.    Analysis

¶ 32    The permanent orders hearing occurred on August 23, 2023, and the district court entered the decree of dissolution the next day. Husband does not challenge the court's finding that, approximately two months later, he made withdrawals totaling $36,854.61 from

14

the HELOC. Instead, husband argues that, because he paid some of wife's debts with the HELOC proceeds, it was inequitable for the court to assign him responsibility for the entirety of the HELOC debt in the permanent orders and in the later order on wife's C.R.C.P. 59(a) motion.

¶ 33 We conclude that, regardless of the equities, the district court could not have allocated any portion of the HELOC debt to wife. Husband incurred the debt after the court entered the decree of dissolution legally dissolving the parties' marriage. Therefore, the HELOC balance was husband's separate, post-decree debt, which was "not distributable" to wife, *Heupel*, 936 P.2d at 572, given that it did not "exist[] at the time of dissolution," *Lockwood*, 971 P.2d at 267. *See also* § 14-10-113(2)(c), (3); *de Koning*, ¶ 29.

¶ 34 The district court was required to value and divide the marital estate as of the date of the permanent orders hearing, at which time the HELOC had a zero balance. § 14-10-113(5). And indeed, the court's allocation of the approximately $470,100 of equity in the marital home to wife was properly based on the HELOC's zero balance at the time of the hearing. But following entry of the decree, husband reduced the equity in the marital home that had

15

been allocated to wife by unilaterally making withdrawals against the HELOC. Given such interference by husband with the court's intended property division, we conclude that the court had the inherent authority to effectuate its intended marital property division by allowing wife to offset the entire amount of the outstanding HELOC debt against the equalization payment. *See Schrader v. Schrader*, 400 P.2d 675, 679 (Colo. 1965) (courts have inherent power to make their orders effectual); *Laleh v. Johnson*, 2016 COA 4, ¶ 31 (A district court has "inherent authority to administer justice and to make its actions effective."), *aff'd on other grounds*, 2017 CO 93.

¶ 35 Therefore, albeit for reasons different than those on which the district court relied, we decline to disturb the court's determination that husband was responsible for the entirety of the HELOC debt, including interest.

## IV. Attorney Fees

¶ 36 Husband contends that the district court failed to make sufficient findings to support its order that he must pay $15,000 of wife's attorney fees. We agree.

¶ 37    Under section 14-10-119, C.R.S. 2024, a district court may order a party in a dissolution proceeding to pay a reasonable amount of the other party's attorney fees when there is a disparity in the parties' financial circumstances.  *See In re Marriage of Gutfreund*, 148 P.3d 136, 141 (Colo. 2006).  And under section 13-17-102, C.R.S. 2024, the court may order a party to pay attorney fees if it finds that the party's conduct lacked substantial justification, meaning that it was substantially frivolous, groundless, or vexatious.  *See In re Marriage of Aldrich*, 945 P.2d 1370, 1378 (Colo. 1997).

¶ 38    Wife testified that she owed over $20,000 in outstanding attorney fees as of the permanent orders hearing and stated that she had incurred $79,000 in attorney fees through July 2023.

¶ 39    The court ordered husband to pay $15,000 of wife's attorney fees under section 14-10-119 "due to the parties' disparate financial resources and [husband's] history of prolonging this litigation."  The court listed the numerous actions that husband took that delayed the case and otherwise caused wife to incur attorney fees.

¶ 40    From the court's ruling, we are unable to discern whether it awarded wife attorney fees under section 14-10-119, section 13-17-

17

102, or both. *See In re Marriage of Gibbs*, 2019 COA 104, ¶ 9. Although the court's findings briefly reference section 14-10-119 and the parties' disparate financial resources, the findings suggest that the court primarily awarded attorney fees due to husband's vexatious conduct, yet the court made no reference to section 13-17-102. *See In re Parental Responsibilities Concerning I.M.*, 2013 COA 107, ¶ 29 ("An action is substantially vexatious if brought or maintained in bad faith to annoy or harass another, and vexatiousness includes conduct that is arbitrary, abusive, stubbornly litigious, or disrespectful of the truth."). When a court awards attorney fees under section 13-17-102, it must consider the factors set forth in section 13-17-103(1), C.R.S. 2024, and make findings on those factors to explain how it arrived at the amount of its award. *See Aldrich*, 945 P.2d at 1378-79; *In re Marriage of Tognoni*, 313 P.3d 655, 661 (Colo. App. 2011). But the court made no specific findings showing that it considered the statutory factors. *See* § 13-17-103(1).

¶ 41 And although the district court found that husband's actions increased wife's litigation expenses, nowhere did the district court make any findings to explain whether the $15,000 of attorney fees

awarded to wife was reasonable. In other words, the court did not make any findings that the amount awarded could be attributed to husband's increase in the litigation costs. *See id.*; *see also Payan v. Nash Finch Co.*, 2012 COA 135M, ¶ 18 (considering the lodestar analysis when determining the reasonableness of attorney fees); *In re Marriage of Aragon*, 2019 COA 76, ¶ 22 (directing the court to conduct a lodestar analysis when determining the reasonableness of attorney fees under section 14-10-119).

¶ 42  Thus, we reverse the district court's award of attorney fees and remand for further proceedings. The court must reconsider wife's request, identify the legal authority supporting any award of fees, and make findings sufficiently explicit for us to understand the basis of its decision, including findings as to the reasonableness of any fee award. *See Gibbs*, ¶ 9; *Payan*, ¶ 18; *Aragon*, ¶ 22.

## V.    Appellate Attorney Fees

¶ 43  Wife requests an award of her appellate attorney fees under section 14-10-119 due to the alleged financial disparities between the parties. Because the district court is better equipped than we are to determine the factual issues regarding the parties' current

financial resources, we direct it to address this request on remand. *See* C.A.R. 39.1; *In re Marriage of Schlundt*, 2021 COA 58, ¶ 54.

## VI. Conclusion

¶ 44     The portions of the judgment concerning the property division, maintenance, and child support are affirmed. The portions of the judgment concerning the award of attorney fees to wife are reversed. The case is remanded for further proceedings as to wife's requests for attorney fees and appellate attorney fees. Those portions of the judgment not challenged on appeal remain undisturbed.

JUDGE LIPINSKY and JUDGE MOULTRIE concur.